**Opinion issued April 5, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00755-CV

————————————

**BRANDY WEIDO, Appellant**

**V.**

**DON WEIDO, Appellee**

---

**On Appeal from the 300th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 61922**

---

## MEMORANDUM OPINION

Brandy Weido and Don Weido are the divorced parents of "Charles."[1]

Brandy appeals the trial court's order granting Don's motion to clarify the parents'

---

[1] The child, C.W., will be referred to by the pseudonym, "Charles," both to protect his privacy and for ease of reading.

mediated settlement agreement, adopted by a previous trial court order. Brandy argues that the order granting the motion to clarify constituted a substantive change of the MSA in violation of Section 157.423 of the Texas Family Code. We agree and reverse the trial court's order.

## Background

Brandy and Don divorced when Charles was three. In the section of the original decree of divorce discussing Charles's education, Brandy and Don agreed to send Charles to "St. Helen's Catholic School in Pearland, Texas or any other school agreed to by both parties beginning with preschool." A different section of the decree that granted each parent possession rights over Charles during different times of the year based, in part, on a "school" holiday schedule, defined "school" as "the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides."

When Charles was five, Brandy and Don agreed to a modified mediated settlement agreement "to establish certain rights and obligations" regarding Charles's care. This agreement amended the original divorce decree in several ways: it provided for new requirements on the communication of information about Charles's health and welfare, communication between the parents and Charles, issues the parents are (or are not) allowed to discuss in front of Charles,

2

interference with the other parent's time with the child, international travel, Charles's therapy, and child support. Under this MSA, which the trial court adopted in its Order in Suit to Modify Parent-Child Relationship, both parents are designated Joint Managing Conservators of Charles, who primarily lives with Don. In contrast to the original requirement that Charles go to St. Helen's, Don now has "the right to make educational decisions that enroll the child in a private school or within Pearland ISD, and the right to receive child support." The order implementing the MSA retained the original divorce decree's definition of "school" in a section of the order entitled the "modified possession order," but not for the other sections of the order. The parents also agreed that, "[t]he residence of the child is designated to be within Pearland City Limits, per the Final Decree of Divorce."

Initially, Don enrolled Charles in a private school, which Charles attended until Don filed the motion for clarification that is the subject of the lawsuit. Don filed the motion because he was considering sending Charles to public school the following fall. According to the motion for clarification, Don's house is in the City of Pearland but actually "falls within Alvin ISD and so the school that the child is required to attend is not within Pearland ISD . . . ."

Don argued two problems existed with the MSA, creating an "ambiguity," and requested that the trial court "remove the ambiguity." First, he argued that,

3

when he signed the MSA, he understood it to allow him to enroll Charles in "a primary school within the public school district that the child primarily resides," which is Alvin ISD. Second, he argued that "[i]t is not possible for [him] to send the child to the primary school within the public school district that [Charles] primarily resides."

The trial court held a hearing on Don's motion. No witnesses testified at the hearing; instead, the parents' attorneys made brief arguments. The trial court granted Don's motion because an "impossibility of performance exists" because Don resides "outside of Pearland ISD. [He] either has to move . . . which I'm not in the habit of ordering people to move; or he has to lie about where his kid currently lives."

Brandy's lawyer pointed out that "he could enroll the kid in a private school, like the kid has been." The trial court acknowledged "[h]e could. But there's an impossibility of performance with regard to the Pearland ISD." The trial court then modified the MSA "to read Pearland ISD or Alvin ISD, so that nobody has to move." Brandy appeals that order.

## Clarification or Substantive Change

On appeal, Brandy argues that "[t]he trial court's order constitutes a substantive change to both the MSA and the Order in Suit to Modify Parent-Child Relationship which is unenforceable under Section 157.423 of the Family Code."

4

## A. Statutory background

The Texas Family Code grants a trial court the authority to "clarify an order rendered by the court in a proceeding under this title if the court finds . . . that the order is not specific enough to be enforced by contempt." TEX. FAM. CODE ANN. § 157.421 (West 2014). The trial court, however, "may not change the substantive provisions of an order to be clarified . . . ." *Id.* § 157.423(a).

The Family Code does not define "substantive change," but Texas courts look to judgments *nunc pro tunc* to provide guidance on what constitutes a "substantive change" because a "clarification order is analogous to a judgment *nunc pro tunc* in that it cannot substantively change a final order." *In re Marriage of Ward*, 137 S.W.3d 910, 913 (Tex. App.—Texarkana 2004, no pet.); *see In re V.M.P.*, 185 S.W.3d 531, 534 (Tex. App.—Texarkana 2006, no pet.); *Dickens v. Willis*, 957 S.W.2d 657, 659 (Tex. App.—Austin 1997, no pet.). Instead, such a judgment can only correct a clerical error. *Ward*, 137 S.W.3d at 913.

In the *nunc pro tunc* context, two types of errors exist: (1) judicial errors and (2) clerical errors. A substantive change occurs when the error is "judicial," that is, the trial court corrects an error that "results from judicial reasoning or determination." *Id.* A trial court can only enter a judgment *nunc pro tunc* to correct a clerical error, an error that "results from inaccurately recording the decision of the court . . . ." *Id.* "When deciding whether a correction is of a judicial or a

5

clerical error, we look to the judgment actually rendered, not the judgment that should or might have been rendered. . . . Thus, even if the court renders incorrectly, it cannot alter a written judgment which precisely reflects the incorrect rendition." *Escobar v. Escobar*, 711 S.W.2d 230, 231–32 (Tex. 1986).

## B.     Standard of review

The determination of whether an alleged error is "clerical or judicial is a question of law." *Dickens*, 957 S.W.2d at 659. Before deciding the legal question of whether the error is clerical or judicial, however, the trial court must first make a fact finding that an error exists by determining (1) that it previously rendered a judgment, (2) the contents of that judgment, and (3) that an error was made recording the contents of that judgment. *Id.* This fact finding must be supported by "clear, satisfying, and convincing" evidence. *Id.*

We may review that fact finding for legal and factual sufficiency of the evidence. *Id.* When both the legal and factual sufficiency of the evidence are challenged, "we first review the legal sufficiency of the evidence to determine whether the record contains any evidence of probative value to support the factfinder's decision." *Kellmann v. Workstation Integrations, Inc.*, 332 S.W.3d 679, 684 (Tex. App.—Houston [14th Dist.] 2010, no pet.). If a party attacks the legal sufficiency of the evidence, it must show no evidence exists to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). The test

6

for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

If the evidence is legally sufficient, we then examine the factual sufficiency of the evidence. *Kellman*, 332 S.W.3d at 684. In conducting a factual sufficiency review, we "consider and weigh all of the evidence supporting and contradicting the challenged finding and set the finding aside only if the evidence is so contrary to the overwhelming weight of the evidence as to make the finding clearly wrong and manifestly unjust." *McMahon v. Zimmerman*, 433 S.W.3d 680, 691 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

If we determine that an error exists, we consider the legal question of whether the error is clerical or judicial. *See Zimmerman*, 433 S.W.3d at 691. We examine this legal question de novo. *See Escobar*, 711 S.W.2d at 232 (stating that question is one of law); *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) ("[Q]uestions of law are always subject to de novo review.").

## C.   No evidence of an error

Brandy first argues that the trial court heard "no evidence" that an error existed at all and that "the MSA and decree that [Don] seeks to *clarify* are clear and unambiguous."

The trial court's fact finding that an error exists must be supported by "clear, satisfying, and convincing" evidence. *Dickens*, 957 S.W.2d at 659. When there "is nothing in the record to indicate that the [order] incorrectly stated the judgment actually rendered at that time," a trial court errs by granting a clarification order. *Cisneros v. Cisneros*, No. 13-00-187-CV, 2004 WL 210704, at *1–3 (Tex. App.—Corpus Christi Feb. 5, 2004, no pet.) (mem. op.).

For example, in *Dickens*, the trial court clarified the divorce decree to require that the mother pay the father child support, rather than the father paying the mother as stated in the original decree. *Dickens*, 957 S.W.2d at 659. As evidence to support the existence of an "error" in the divorce decree, the father proffered an email from the mother acknowledging that the divorce decree contained a "typographical error concerning payment of child support" and a docket entry from the trial judge ordering the mother to pay child support to the father. *Id.* Because of this evidence, the trial court correctly found that the error in the original decree was clerical and the clarification order "did not substantively change the divorce decree." *Id.* at 660.

No such evidence was presented to support a finding that the MSA contains an error. No evidence was presented at the trial court hearing nor did Don attach an affidavit or other evidence to his motion for clarification. Don did not present evidence to support his assertion that it was his "understanding at the time the

8

agreement was reached that a primary school within the public school district that the child primarily resides was included in the meaning of 'school' as used within the order . . . ."[2] Nor did Don proffer any evidence that "[i]t is not possible for [him] to send the child to" Pearland ISD. Similarly, there was no evidence regarding Brandy's residence or whether her residence would allow Charles to attend a school in Pearland ISD.

Because Don did not meet his burden to establish the existence of an error by clear, satisfying, and convincing evidence, the trial court erred by granting the motion to clarify.

**D.     Any error would have been judicial and not subject to clarification**

Even if an error exists in the MSA, a clarification order is not appropriate in this context because the change would be a "substantive change" rather than a clerical one. It is "a heavy burden . . . to establish that the error involved is clerical in nature and, thus, one for which a clarification order may be entered." *Ward*, 137 S.W.3d at 914.

---

[2]     Don argued that the original divorce decree's definition of "school" as "the public school district in which the child primarily resides" creates an ambiguity in the MSA. The definition states that it applies only "[i]n this modified expanded standard possession order" section of the decree; it does not purport to apply to the remainder of the decree. That section requires a definition of school because it relies on a "regular school term" to determine which days Brandy or Don has possession of Charles. For example, Don has right of possession over Charles "beginning at the time the child's school is dismissed for the school's spring vacation and ending at the time school regularly resumes after that vacation" in even-numbered years. That definition does not apply to the section of the decree authorizing and limiting Don's right to choose a school for Charles.

9

We can only look to the plain meaning of the words in the decree to determine whether any "error" is judicial or clerical. "The only basis for clarifying a prior decree is when a provision is ambiguous and non-specific. In the absence of an ambiguity, the trial court is without authority to modify the judgment." *Lundy v. Lundy*, 973 S.W.2d 687, 688–89 (Tex. App.—Tyler 1998, pet. denied).

In *Lundy*, the father sought to void an increase in the amount of child support payment he owed the mother. 973 S.W.2d at 689. The divorce decree required him to pay a higher amount of child support after the father and mother sold the house in which the mother was living to help her with rent payments. *Id.* Before the house sold, the father finished paying off the mortgage payments. *Id.* The mother argued that he should, therefore, have to pay that increased amount of child support because he was no longer paying the mortgage. *Id.* The divorce decree, however, was clear that he did not owe the higher amount of child support until the house sold. *Id.* The provision was "specific and unambiguous"; it required "no interpretation or clarification." *Id.* Thus, the trial court could not grant a "clarification order" to increase the father's child support payment. *Id.*

In *R.F.G.*, the trial court also erred in modifying an unambiguous divorce decree. 282 S.W.3d 722, 728 (Tex. App.—Dallas 2009, no pet.). The divorce decree awarded the husband the "bed" but the wife argued that this only entitled him to the "mattress and box spring," not the "bedframe." *Id.* The trial court erred

10

in looking to other, extrinsic evidence to determine the parties' intended definition of a "bed"—instead, the Dallas court held that the plain, unambiguous meaning of "bed" included the bedframe. *Id.* Thus, the trial court's clarification, requiring the husband to pay for the bedframe, was a substantive change to the divorce decree and impermissible. *Id.* at 729.

For an error to be "clerical" rather than "judicial," and thus, correctable by a clarification order, fixing the error in the wording of the order must not require "additional judicial reasoning." *Ward*, 137 S.W.3d at 914. *Ward* compared two cases to illustrate the difference between a "clerical" and "judicial" error. *Id.* at 913–16. In one, the recorded land deed neglected to convey to the buyer an easement, which the land sale contract stated the buyer should receive. *Id.* at 914 (discussing *McGehee v. Epley*, 661 S.W.2d 924 (Tex. 1983)). The error there was "clerical" because the contract showed that the parties intended to convey the easement. *Ward*, 137 S.W.3d at 914. In the second, the final judgment listed damages for each of 87 lost bales of cotton but accidently omitted the value of six bales. *Id.* This error was judicial because finding the value of the six bales was "a failure to consider evidence in the case" and fixing that error would require "additional judicial reasoning." *Id.*

In *Ward*, the mother attempted to "clarify" the divorce decree to obtain an increase in child support from the father. *Id.* at 911–12. The trial court properly

refused to grant the clarification order because no evidence, such as a reporter's record of the initial hearing to set child support, existed that showed that an error existed in the original order. *Id.* at 915. Any change in the amount of child support "necessarily involved judicial reasoning" and would "impose an obligation where none had previously existed . . . ." *Id.*

The MSA provision in question contains no ambiguity. The order implementing the MSA is clear that Don must send Charles to "a private school or [a school] within Pearland ISD." This text is not ambiguous: it outlines two specific options for Charles's schooling. Thus, the "trial court is without authority to modify the judgment." *See Lundy*, 973 S.W.2d at 688–89.

Moreover, changing the school district would be a "substantive change," not a clarification. *See* TEX. FAM. CODE ANN. § 157.423(a); *V.M.P.*, 185 S.W.3d at 534–35 ("clarification order" removing "or 30% of his net weekly income" from divorce decree ordering father to pay child support "of $97.50 per week, or 30% of his net weekly income . . . . " was "clearly a substantive change" because it changed the father's obligation). The relative qualities of schools, family and community ties to the schools, and academic and extra-curricular opportunities in different schools all play roles in the decision of which school to select for a child's education. These factors are relevant to the parent's determination of to

send Charles to school and reflect that any change to the school district is a "substantive change."

Finally, the trial court's clarification order cannot be treated as a modification order. *See V.M.P.*, 185 S.W.3d at 534 (holding that trial court could have modified original divorce decree even though court mistakenly titled its order). While a trial court can interpret an ambiguous MSA, it is "absolutely prohibited" from modifying a decree "in cases involving an MSA." *Williams v. Williams*, 407 S.W.3d 770, 774 (Tex. App.—El Paso 2012, no pet.); *see In re Marriage of Joyner*, 196 S.W.3d 883, 890–91 (Tex. App.—Texarkana 2006, pet. denied) (holding trial court may not modify MSAs "as it sees fit, and it has no authority to enter a judgment that varies from their terms"). No one here argues that the exception allowing a trial court to refuse to adopt a "mediated settlement agreement [that] was illegal or was procured by fraud, duress, coercion, or other dishonest means" applies; thus, the trial court could not modify the order implementing the MSA. *See Joyner*, 196 S.W.3d at 891.

Because the "clarification order" constituted an impermissible substantive change and the order cannot be construed as a permissible modification order, the trial court erred in granting Don's motion for clarification. The trial court cannot modify the MSA for the parents. *See Toler v. Sanders*, 371 S.W.3d 477, 480 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("A mediated settlement agreement under

section 6.602 is more binding than a basic written contract because, except when a party has procured the settlement through fraud or coercion, nothing either party does will modify or void the agreement once everyone has signed it.")

We sustain Brandy's first issue.

### Attorney's Fees

Brandy also argues that she "pled for attorney's fees and presented evidence in support [of those fees]. Since [she] was not the prevailing party in the trial court, no attorney's fees were awarded. In the event [she] prevails in this appeal, she requests that this case be remanded to the trial court to determine reasonable and necessary attorney's fees."

In a suit to modify the parent–child relationship, such as this, "the court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney." TEX. FAM. CODE ANN. § 106.002(a) (West 2014); *see Matelski v. Matelski*, 840 S.W.2d 124, 131 (Tex. App.—Fort Worth 1992, no writ) (upholding attorney's fee award for motion to clarify divorce decree). The decision to award attorney's fees, however, lies "within the trial court's discretion." *Watts v. Oliver*, 396 S.W.3d 124, 132 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Because we reverse the trial court's order and Brandy, therefore, prevails on appeal, "the trial court should be given an opportunity to reconsider the award of attorney's fees when it renders a

new judgment." *Bruni v. Bruni*, 924 S.W.2d 366, 369 (Tex. 1996). Thus, we remand to the trial court for consideration of what attorney's fees, if any, Brandy is entitled to as a result of this opinion.

## Conclusion

We reverse the trial court's order of clarification, render judgment denying Don's motion to clarify, and remand for consideration of an attorney's fee award to Brandy.


Harvey Brown
Justice

Panel consists of Justices Bland, Brown, and Lloyd.